# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                Case No. 06-Cr-71

ESSIX L. McBRIDE,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

## NATURE OF CASE

On March 28, 2006, a federal grand jury sitting in this district returned a one-count indictment against the defendant, Essix L. McBride, charging him with possession of a firearm by a convicted felon in violation 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On April 21, 2006, the defendant appeared for an arraignment before this court and entered a plea of not guilty. On May 11, 2006, the defendant filed a motion to suppress physical evidence and statements based on an unlawful traffic stop. (Docket #8).

An evidentiary hearing was held on the defendant's motion to suppress on May 31, 2006. Milwaukee Police Department Officer Michael Pendergast testified at the hearing on behalf of the government. The defendant testified on his own behalf. Based on the testimony and evidence presented at the hearing, the court now makes the following findings of fact.

**Findings of Fact**

Michael Pendergast, an officer with the Milwaukee Police Department (MPD), was working on Wednesday, January 18, 2006. At about 12:18 a.m. on that date, he was in an unmarked police car with his partner, Detective James Hutchinson, near 59th Street and Hampton Avenue in the City of Milwaukee, Wisconsin. The officers, who were armed, were not in uniform. While they were on patrol, the officers observed a four-door, gray Mazda vehicle, which appeared to be speeding, driving eastbound on Hampton Avenue. In his testimony, Officer Pendergast estimated that the vehicle was going approximately 40 to 50 miles an hour in a 30 to 35 mile per hour speed zone. Officer Pendergast observed the Mazda make a sharp left turn onto 39th Street going northbound. He testified that the driver of the Mazda did not use a left turn signal and appeared to be speeding.[1]

Officer Pendergast followed the vehicle which traveled through the intersection of 39th Street and Hampton Avenue. The Mazda then drove into an alley. Officer Pendergast testified that the vehicle was traveling at a high rate of speed as it made a sharp right turn into the "T" alley. Officer Pendergast was a few car lengths behind the gray Mazda. According to Officer Pendergast, the Mazda then started to make a sharp left turn northbound. At that time, Officer Pendergast activated his lights and made one "chirp" of his siren.

The gray Mazda stopped and the police vehicle stopped about a half of a car length behind the defendant's vehicle. At the time of the stop, the only people in the alley were the defendant and the two officers.

---

[1] Detective Hutchinson ran a registration check on the gray Mazda, but Officer Pendergast did not recall the results.

Officer Pendergast got out of his car and proceeded to the driver's side of the vehicle. while Detective Hutchinson walked to the passenger side door. Officer Pendergast had a badge displayed in plain view around his neck. Although he was armed, Officer Pendergast did not draw his weapon. As he was approaching the Mazda, Officer Pendergast illuminated the inside of the defendant's vehicle with a flashlight and observed the defendant bend down in front of his seat. The defendant's shoulders tipped down and his head bent a bit and the defendant appeared to be reaching for something on the floor. The defendant was hunched over and his right arm was moving when Officer Pendergast reached the vehicle. Officer Pendergast told the defendant, "Let me see your hands." The defendant immediately showed the officer his hands.

Officer Pendergast opened the door to the defendant's vehicle and asked the defendant to step out of the car for safety purposes. The defendant complied. Officer Pendergast did not ask the defendant if he knew why he was stopped or whether he had been speeding. He took the defendant to the back of his vehicle. The defendant was not under arrest at that time.

Based on his experience and the defendant's furtive movements, Officer Pendergast asked the defendant if he had anything illegal in his vehicle. Officer Pendergast was concerned for his and Detective Hutchinson's safety and thought the defendant might be trying to conceal or get a weapon. According to Officer Pendergast, the defendant said, "Let me explain." Officer Pendergast testified that the defendant told him that earlier that night he had gotten into a confrontation with an unknown black male in the area of Teutonia Avenue and Roosevelt Boulevard in Milwaukee. The defendant said that he went to 55th Street and Hampton Avenue to get a firearm because he knew where the unknown black male lived -

- 3 -

near 19th Street and Hampton Avenue. The defendant said he was going to go kill the black male.

At that time, the officers had not searched the defendant's vehicle. After his conversation with the defendant, Officer Pendergast went to the driver's side of the vehicle. The driver's side door was still open from the defendant exiting the vehicle. Officer Pendergast illuminated the floor area and bent down to look inside the vehicle. He saw a chrome firearm on the floor, partially hidden under the seat. He was able to see almost the entire barrel of the gun. When he saw the firearm, Officer Pendergast told Detective Hutchinson to take the defendant into custody for carrying a concealed weapon.

Detective Hutchinson, who was standing with the defendant, placed the defendant under arrest. Officer Pendergast then recovered the firearm from the vehicle and did a search of the vehicle incident to the defendant's arrest. No traffic citation was issued to the defendant. Officer Pendergast placed the firearm in the police vehicle. He, Officer Hutchinson and the defendant then waited for a conveyance squad. Officer Pendergast ran a check of the defendant's name and found out that the defendant was on bail for another firearm offense.

The defendant, who is 20 years old, testified that he was driving a light blue 2006 Mazda 6 with New York plates from a dealership when he was stopped after midnight on January 18, 2006. The Mazda has an automatic transmission and a console with a gear shift between the two front seats. The defendant used his right hand to shift the transmission in the "T" alleyway when he was stopped by the officers. The defendant testified that he was not speeding.

- 4 -

The defendant denied recalling that he told the officers that he had met a person who had offended him in the area of Teutonia Avenue and Roosevelt Boulevard. The defendant testified that he remembered picking up a pistol at 55th Street and Hampton Avenue. The defendant was convicted in August 2005 of felony fleeing and eluding an officer. The defendant was never issued a citation for speeding or for making a left-hand turn without signaling.

## **Analysis**

In moving to suppress the evidence, the defendant asserts that there was no lawful basis to support the traffic stop of the defendant's vehicle because Officer Pendergast is not a credible witness. Specifically, he maintains that Officer Pendergast's testimony is not credible because it is not corroborated, he never asked the defendant for his driver's license, vehicle registration or whether he knew why he was stopped and he never issued any traffic citation to the defendant. The defendant further states that even if Officer Pendergast's testimony is to be believed, there was insufficient evidence of any traffic violation.

The defendant also asserts that the officers lacked a lawful basis to conduct a search of the vehicle during the traffic stop. Given his assertion that there was no lawful basis for the traffic stop, the defendant maintains that his subsequent interrogation after his arrest should be excluded under the "fruit of the poisonous tree" doctrine.[2]

In opposing the motion, the government assets that the testimony of Officer Pendergast was credible and that he properly stopped the defendant's vehicle because the defendant was

---

[2]The defendant has withdrawn his claim for suppression based on his contention that he should have been advised of his Miranda rights before he was interrogated by Officer Pendergast during the traffic stop. Miranda v. Arizona, 384 U.S. 436 (1966). See Defendant's Memorandum in Support of Defendant's Motion to Suppress Physical Evidence and Statements Based on an Unlawful Traffic Stop at 11.

- 5 -

speeding and because he made a left hand turn without signaling. The government further asserts that, contrary to the defendant's contention, Officer Pendergast had sufficient reasonable cause to search the defendant's vehicle based upon his observations of the defendant.

In <u>Whren v. United States</u>, 517 U.S. 806, 809 (1996), the Court held that "as a general matter, the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. In so holding, the Court rejected the argument that the constitutional reasonableness of a traffic stop depends upon the actual motivations of the individual officers involved. <u>Id.</u> at 813. The propriety of a traffic stop does not depend on whether an individual is actually guilty of committing a traffic offense. <u>See</u> <u>United States v. Cashman</u>, 216 F.3d 582, 586 (7th Cir. 2000). The pertinent inquiry is whether it is reasonable for the law enforcement officer to believe that a traffic offense has occurred. <u>Id.</u> at 587.

In <u>Michigan v. Long</u>, 463 U.S. 1032 (1983), the Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden is permissible if the police officer possesses a reasonable belief on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing the suspect is dangerous and the suspect may gain immediate control of weapons." <u>Id.</u> at 1049 (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 21 [1968]). The "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." <u>Michigan v. Long</u>, 463 U.S. at 1049.

- 6 -

The protective search upheld in Long arose under the following circumstances. The law enforcement officers had stopped defendant Long in a rural area shortly after midnight when he was driving his automobile at excessive speed and his car swerved into a ditch. The officers found it necessary to repeat their questions to defendant Long who appeared to be intoxicated. Defendant Long was not frisked nor the car searched until the officers observed a large knife in the interior of the car which he was about to reenter. See also, United States v. Arnold, 388 F.3d 237, 239 (7th Cir. 2004); United States v. Nash, 876 F.2d 1359, 1361 (7th Cir. 1989).

At the core, the defendant's motion to suppress presents a credibility issue. Officer Pendergast testified that he observed the defendant traveling 40 to 50 miles per hour in a 30 to 35 mile per hour speed zone on Hampton Avenue at about 12:18 a.m. on January 18, 2006. He also testified that he observed the driver make a sharp left turn onto 39th Street without signaling. The defendant's vehicle then turned into an alley. The officers followed and stopped the defendant's car. As he was approaching the driver's side door of the Mazda, Officer Pendergast illuminated the inside of the vehicle with a flashlight and observed the defendant bending down in the driver's seat. The defendant's shoulders tipped down and his head bent down a bit. The defendant appeared to be reaching for something on the floor. Officer Pendergast told the defendant to let him see his hands and the defendant complied. He then instructed the defendant to exit the vehicle.

After the defendant exited the Mazda, Officer Pendergast asked him if he had anything illegal in the vehicle because he was concerned for his and Detective Hutchinson's safety. According to Officer Pendergast, the defendant explained that he had gotten into a confrontation with an unknown black male near Teutonia Avenue and Roosevelt Boulevard

and that he went to 55th Street and Hampton Avenue to get a firearm. He knew that the individual lived near 19th Street and Hampton Avenue and he was going to go kill him.

The testimony of the defendant is diametrically opposed to that of Officer Pendergast in several significant respects. The defendant testified that he was not speeding the night of January 18, 2006. He also denied telling the officers that he had had a problem with a person in the area of Teutonia and Roosevelt Boulevard earlier that evening. However, the defendant testified that he remembered picking up a pistol at 55th Street and Hampton Avenue.

After the defendant's conversation with Officer Pendergast, the officer went to the driver's side of the Mazda – the door was still open -- and illuminated the inside of the vehicle. He bent down and observed a chrome firearm partially hidden under the seat. He then told Detective Hutchinson to arrest the defendant for carrying a concealed weapon.

Given the conflicting testimony, it is incumbent upon the court to make a credibility determination between Officer Pendergast and the defendant. The defendant's rationale for discounting the credibility of the officer is not persuasive. Admittedly, Officer Pendergast's testimony was not corroborated by his partner. However, Detective Hutchinson was on the passenger side of the vehicle and there is no indication that he heard the conversation between the defendant and Officer Pendergast.

While an officer conducting a traffic stop initially might ask the driver for his license and/or vehicle registration, there is no evidence that he or she is required to do so as soon as a vehicle is stopped. Moreover, in this case, Officer Pendergast was concerned for the officers' safety because he observed the defendant bend down in the driver's seat and appear to be reaching for something on the floor. Once the defendant told the officer about picking

- 8 -

up a firearm and the weapon was located, the defendant was arrested for carrying a concealed weapon, a more serious charge than a traffic citation.

Although both witnesses testified clearly, on balance, the court finds the testimony of Officer Pendergast more credible. Officer Pendergast testified unhesitatingly and his testimony was corroborated, in part, by the testimony of the defendant. As noted, Officer Pendergast said that the defendant told him that he had obtained a weapon in the area of 55th Street and Hampton Avenue. The defendant testified that he recalled picking up a weapon at that location. Therefore, the court finds that Officer Pendergast and Detective Hutchinson had a reasonable basis for stopping the defendant for traffic violations, namely for speeding and for failing to signal for a left turn. See Whren, 517 U.S. at 809.

Once the defendant's Mazda was stopped and based on the defendant's furtive movements, Officer Pendergast properly requested that the defendant exit the vehicle for the safety of the officers. The defendant's statement to Officer Pendergast that he had obtained a firearm from the area of 55th Street and Hampton Avenue provided the officer with reasonable grounds for the officer to conduct a protective search of the passenger compartment of the defendant's vehicle for the safety of the officers. Michigan v. Long, 463 U.S. at 1049; United States v. Arnold, 388 F.3d 237, 239 (7th Cir. 2004). The firearm was found partially hidden under the driver's seat.

Based on the evidence presented, the court concludes that Officers Pendergast and Hutchinson had probable cause to stop the defendant's vehicle for a traffic violation. Moreover, the defendant's statements at the scene provided the officers with reasonable suspicion to believe that he possessed a firearm at the traffic stop and, therefore, the officers could conduct a protective sweep of the passenger compartment of the defendant's vehicle.

- 9 -

Case 2:06-cr-00071-LA   Filed 06/22/06   Page 9 of 10   Document 20

When Officer Pendergast illuminated the inside of the Mazda and looked inside, he observed the weapon partially hidden under the front seat. Thus, the evidence and the defendant's statements are not subject to suppression. Accordingly, this court will recommend that the United States district judge enter an order denying the defendant's motion to suppress the physical evidence and any statements based on the stop of his vehicle, (Docket # 8).

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** the defendant's motion to suppress physical evidence and statements. (Docket # 8).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 22nd day of June, 2006.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge