# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                             **Case No. 06-CR-71**

**ESSIX McBRIDE**
        **Defendant.**

## SENTENCING MEMORANDUM

### I. FACTS AND BACKGROUND

A police officer observed defendant Essix McBride driving too fast and decided to conduct a traffic stop. As the officer approached, he saw defendant reaching towards the floor. The officer ordered defendant to show his hands and removed him from the car. He asked defendant if there was anything illegal in the vehicle, and defendant replied, "let me explain." Defendant then proceeded to tell the officer that earlier that night he had gotten into a confrontation with another man, who pulled a gun on him. Defendant said that he left the area, picked up a firearm at a friend's house and was on his way back to kill the other man. The officer looked in defendant's car and saw a handgun on the floor, partially under the seat, where defendant had been reaching. He arrested defendant for carrying a concealed weapon and took him to the police station where, after receiving Miranda warnings, defendant repeated his statement about the reason he had the gun. The officer wrote out the statement, and defendant signed it.

The government charged defendant with possessing a firearm as a felon. See 18 U.S.C. § 922(g). Defendant moved to suppress the gun, arguing that the officer lacked a

basis to stop him. During the suppression hearing, defendant denied that he was speeding or telling the officer that he planned to shoot the other man. I found the officer more credible on both points and denied the motion.

Defendant decided to plead guilty pursuant to a plea agreement with the government. In the agreement, the parties agreed to recommend a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4) and a 3 level reduction for acceptance of responsibility under § 3E1.1, for a final level of 17. The parties further agreed to recommend a sentence within the guideline range as determined by the court. During the plea colloquy, defendant admitted possessing the gun but again denied stating that he planned to use the gun to kill anyone. I accepted his plea, ordered a pre-sentence report ("PSR") and set the matter for sentencing.

The PSR recommended a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) because defendant had previously been convicted of a crime of violence, as well as a 4 level enhancement under § 2K2.1(b)(6) because he possessed the gun with the intent to commit another felony offense, i.e. to shoot the man with whom he had feuded. See U.S.S.G. § 2K2.1(b)(6) ("If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels."). Coupled with his criminal history category of IV, the PSR recommended an imprisonment range of 57-71 months. Neither side objected to the PSR.

At sentencing, defendant initially requested a below-guideline sentence, but after the AUSA objected to his request as a possible breach of the plea agreement provision to

2

recommend a guideline term, defendant agreed that he was so bound. However, he stated that when he entered into the agreement he believed his guideline range would be lower, as the parties had not contemplated the 4 level enhancement under § 2K2.1(b)(6). The AUSA acknowledged that the parties had not recommended this enhancement in their agreement. He stated that the enhancement could be appropriate if defendant was taken at his word in his post-arrest statement; however, he did not press the enhancement and left it up to the court.

Because neither side objected and because I believed that defendant made the statement as to his reason for possessing the gun, I adopted the PSR's guideline calculations. However, because I harbored some doubt as to whether defendant actually intended to use the gun, I exercised my discretion under 18 U.S.C. § 3553(a) and imposed a sentence slightly below that range, a sentence at the high end of the range without the § 2K2.1(a)(6) enhancement. In this memorandum, I set forth my reasons.

## II. SENTENCING FACTORS

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,

3

>     medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### III. DISCUSSION

It was somewhat difficult to determine just how serious this offense was and whether the public had to be protected from defendant for an extended time. As noted, the police stopped defendant for a traffic violation, then recovered a loaded .38 caliber handgun from under the seat. Defendant stated that he was on his way to kill another man when the police stopped him. Defendant later denied making the statement, but he did not object to the enhancement under U.S.S.G. § 2K2.1(b)(6) that was based upon it.

I concluded that defendant did make the statement, as the arresting officer credibly testified at the suppression hearing. In denying the suppression motion, I found defendant's testimony as to his post-arrest statements unconvincing, and I reiterated that finding at sentencing. I saw no reason why the officer would invent such a statement, as defendant suggested. In fact, the officer had defendant sign the written version of the statement after each and every paragraph.

Further, the statement was similar to one defendant made when he was previously

4

arrested in possession of a loaded assault rifle. At that time, he told the arresting officers, "If you didn't stop me tonight, someone was going to die." After his arrest in the instant case, defendant again referred to the assault rifle, stating that he loved the gun because it could shoot through anything, and "No house can save you from a gun like that."

Defendant's apparent fascination with guns and his expressed willingness to use them raised serious concerns. However, I also had to consider the possibility that defendant was just a big talker and had no genuine intent to cause any harm. The record contained some support for that conclusion.

Defendant was only twenty years old and seemed rather immature. Despite accumulating a fairly lengthy record for his age, with previous convictions for resisting an officer, fleeing, disorderly conduct, carrying a concealed weapon and bail jumping, he had no history of gun violence. Defendant dropped out of high school and made only a limited effort to get his GED. He had a two year old daughter and was about $4500 in arrears in child support. The child's mother originally told the PSR writer that defendant was not involved in the child's life, quit his job after child support was ordered and harassed her. However, she later recanted those statements in a letter to the court.

Thus, defendant's history depicted a young man with a lack of self-control and direction, but not someone who had engaged in actual gun violence. Further, there were some positives in his background. Defendant had a good childhood, his parents were married and provided for him, and remained supportive. His mother spoke of his gentle nature at sentencing. Defendant had some employment history, most recently working for the asphalt company owned by his grandparents, who also wrote about his good qualities. A fairly large group of friends and family members appeared in support at defendant's

5

sentencing. He seemed to have no alcohol or drug abuse problems.

Given this mixed record, I concluded that there was some need to protect the public, as well as a need for confinement to promote respect for the law and deter other felons from possessing guns. As far as his correctional needs, I concluded that defendant would benefit from anger management counseling and continuation of his education.

As noted, the guidelines called for a term of 57-71 months. Under all of the circumstances, I found that a sentence slightly below that range would be sufficient but not greater than necessary. But for the 4 level enhancement under U.S.S.G. § 2K2.1(b)(6), defendant's range would have been 37-46 months, as the parties contemplated in their plea agreement. Although I concluded that the enhancement technically applied based on defendant's statement, I harbored significant doubt that defendant actually intended to shoot anyone. The government seemed to harbor similar doubts and thus did not advocate the enhancement but rather left its imposition up to the court.

Given defendant's young age, apparent propensity to shoot his mouth off, and the lack of any actual gun violence in his record, I decided to give defendant the benefit of the doubt in imposing sentence under § 3553(a). I elected to impose a sentence that would be at the high end of the range without the § 2K2.1(b)(6) enhancement.[1] In making this determination, I also considered the positives about defendant reflected in the letters from his parents and grandparents and the statement from his mother at sentencing. The

---

[1] I further note that defendant's offense level was elevated to 20 based on his previous conviction of fleeing an officer, an offense that technically qualifies as a crime of violence under the guidelines. See United States v. Rosas, 410 F.3d 332 (7th Cir. 2005). Thus, defendant's range was already high based on the presumed risk he presented to the public. However, the facts of defendant's fleeing offense did not reveal that he intentionally used or threatened to use violence against any person.

6

strong support of his family would assist in his re-integration into the community and make him less likely to re-offend.

## IV.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 46 months.  Because this sentence varied only 2 levels from the guideline range (at the low end) and was supported by the particular facts of the case, it did not create unwarranted disparity.  Upon completion of his prison term, I ordered defendant to serve three years of supervised release, with conditions including, <u>inter alia</u>, that he obtain his GED or HSED and participate in the Cognitive Intervention Program.

Dated at Milwaukee, Wisconsin, this 25th day of January, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge